FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 26 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALVIN WILLIAMS,

        Plaintiff,

– against –

NEW YORK CITY HOUSING AUTHORITY,

        Defendant.

**MEMORANDUM, ORDER, AND JUDGMENT**

10-CV-1070



**JACK B. WEINSTEIN**, Senior United States District Judge:

### Table of Contents

I. Introduction .................................................................................................................... 2
II. Facts and Procedural History ......................................................................................... 2
III. Law ................................................................................................................................. 8
   A. Summary Judgment Standard .................................................................................. 8
   B. Relevant Antidiscrimination Law ............................................................................ 9
      1. Federal Fair Housing Act ................................................................................... 9
      2. State and City Antidiscrimination Law ............................................................ 13
IV. Application of Law to Facts ......................................................................................... 13
V. Conclusion .................................................................................................................... 18

**Appearances**

For the Plaintiff:

    David C. Wims
    Law Offices of David Wims
    Brooklyn, NY

For the Defendant:

    Donna Murphy
    Steven J. Rappaport
    New York City Housing Authority Law Department
    New York, NY

1



I.  Introduction

Plaintiff Alvin Williams sues the New York City Housing Authority ("the Authority"). It is contended that the Authority violated Williams' federal, state, and city-law rights by failing to lease him the apartment in which he claims he had resided with his mother before her death. Williams asserts that the Authority's failure to do so violated the federal Fair Housing Act (the "FHA"), 42 U.S.C. § 3601 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law § 296, and the New York City Administrative Code, N.Y.C. Admin. Code § 8-107(5). *See generally* Verified Complaint ("Compl."), Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. Mar. 9, 2010), CM/ECF No. 1. Damages are sought.

The defendant has moved for summary judgment dismissing the complaint. For the reasons provided below, defendant's motion is granted.

II.  Facts and Procedural History

As a child, Williams moved with his mother and her husband into the apartment that is the subject of this dispute; the residence is owned and supervised by the defendant. *See* Local Rule 56.1 Statement in Support of Defendant's Motion for Summary Judgment ("Def. 56.1 Stmt.") ¶ 10, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 31; Decl. of Patricia Barnett in Support of Defendant's Motion for Summary Judgment ¶ 6, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34. (It is unclear whether plaintiff's family moved into the apartment in 1956 or 1961, *compare* Dep. of Alvin Williams ("Williams Dep.") 62, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 32, *with* Def. 56.1 Stmt. ¶ 10. The date of the move, however, is immaterial to the resolution of the instant motion.) Williams moved out of the apartment in 1976; at that time, he began residing in a house owned by other relatives. *See* Williams Dep. 62.

2

Plaintiff's mother continued to live in the apartment after her son's departure; she occupied it until she died in July 2007. *See* Def. 56.1 Stmt. ¶¶ 11-12. At the time of her death, Ms. Williams was the apartment's tenant of record (the "Record Tenant") and its sole authorized occupant. *See id.* ¶ 11.

In early September 2007, Williams visited the apartment complex's management office and requested that he be allowed to succeed his mother as the Record Tenant. *See id.* ¶ 13. He claimed that he had resided in the apartment for ten years—that is, since 1997—and that his income was minimal. *See id.* He admitted that his mother had not listed him as an occupant in the affidavit of income that she had provided annually to the Authority. *See id.*

A brief discussion of relevant Authority policy and regulations is helpful in understanding the events that followed plaintiff's 2007 visit. The Authority has adopted extensive rules and regulations that serve to limit tenants' ability to add residents to their household, as well as their ability to provide succession rights to relatives. No person, other than an original family member who has resided continuously in an apartment, or a child born or adopted into a household, may reside in an Authority public housing apartment permanently or temporarily unless the Record Tenant requests and obtains permission in writing from the manager of the relevant apartment complex. *See id.* ¶ 5; Tenant Rules and Regulations ¶ 2(p), Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-1. Tenants are reminded of this policy annually. *See* Def. 56.1 Stmt. ¶ 6; Occupant's Affidavit of Income, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-1.

A Record Tenant may add a person to the household consistent with the Authority policy if certain requirements—regarding both the Record Tenant and the resident sought to be

added—are satisfied. The Record Tenant must currently occupy the apartment and must be in good standing with the Authority. *See* Def. 56.1 Stmt. ¶ 7. The prospective resident must be eligible for admission to public housing. *See id.* He must also be related to the Record Tenant; the familial relationships that qualify for this purpose have been enumerated by the Authority, and they include a parent-child relationship. *See id.*; NYCHA Management Manual § 11(B)(2), Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-4. Permanent residency may be acquired only with the written approval of the apartment complex's manager; that permission must be granted if the Record Tenant requests it, the prospective resident is eligible, and the addition would not result in overcrowding. *See* Def. 56.1 Stmt. ¶ 7.

Permitted by the Authority's policy in limited circumstances, after the Record Tenant dies or leaves an apartment, is the succession by a remaining family member ("RFM") to the Record Tenant's lease. *See id.* ¶ 8. "RFM" is a term of art defined by the Authority's Management Manual. To obtain RFM status, a Record Tenant's relative—referred to in the Management Manual as an "RFM claimant"—must:

1. Lawfully have become part of the Record Tenant's household—*i.e.*, be a member of the class of eligible relatives enumerated by the Authority, and obtain from the apartment complex's manager written permission to reside in the apartment;

2. Have remained in continuous occupancy of the apartment for at least one year from the date when written permission was given to live in the apartment by the apartment complex's manager; and

3. Be otherwise eligible for public housing in accordance with the Authority's admissions standards for applicants.

4

*See id.*; *see also* NYCHA Management Manual § 12, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-4.

The RFM policy permits the Authority to review whether an occupant is eligible for admission to public housing, ensures that no occupant of public housing poses a danger to others, and controls tenant selection in a fair, orderly, and lawful fashion. *See* Def. 56.1 Stmt. ¶ 9. RFM claimants who are denied RFM status are permitted to file a grievance with the manager of the relevant apartment complex challenging the denial. *See* NYCHA Management Manual § 12(C), Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-4.

Keeping that administrative background in mind, the events following Williams' September 2007 visit to the apartment's management office can be better understood. In February 2008, a grievance meeting was held. Williams stated that he had lived in his mother's apartment for eleven years, that he received public assistance, and that he earned money by redeeming for refunds cans that he collected on the street. *See* Def. 56.1 Stmt. ¶ 14. The apartment manager noted that the Authority's records indicated that plaintiff had left the apartment in 1976; the manager pointed out the fact that Williams' mother had never sought to add him as a member of the household and that she had not reported his occupancy—as was required—in her annually-submitted affidavit of income. *Id.*; *see also* Project Grievance Summary, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-4.

Plaintiff's grievance was denied on the ground that he had never become part of the family composition—that is, that he had never legally become a part of his mother's household for purposes of the Authority's RFM policy. *See* Def. 56.1 Stmt. ¶ 14. The apartment manager's

grievance denial was affirmed each time over the course of several levels of administrative appeal; the Authority's final decision affirming the denial was issued in January 2009. *See id.* ¶¶ 15-17; *see also* Determination of Status, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8.

Since Williams had taken occupancy by self-help, in February 2009 the Authority commenced eviction proceedings against him in a New York City housing court. *See* Def. 56.1 Stmt. ¶ 18; Petition of New York City Housing Authority, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8.

In answering the Authority's eviction petition, Williams—represented by counsel—raised as affirmative defenses and counterclaims the Authority's alleged violation of federal, state, and city laws that proscribe discrimination on the basis of disability in the provision of housing. *See* Def. 56.1 Stmt. ¶ 19; Verified Answer ¶¶ 6-21, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8. (It is undisputed that Williams suffers from heart disease and depression. *See* Def. 56.1 Stmt. ¶ 26.) In a letter attached to plaintiff's housing court answer, Williams' counsel acknowledged that the plaintiff's mother had never obtained permission for him to join the household. *See id.* ¶ 19. Also provided to the Authority were letters from two physicians who had treated Williams; they requested that the Authority allow plaintiff to stay in the apartment, since, they stated, changing apartments would be deleterious to his health. *See* Letter of Raymond T. Jones, M.D., Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8; Letter of Isak Isakov, M.D., Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8.

Litigation in the housing court was resolved by stipulation in May 2009. Plaintiff consented to the entry of a final judgment of possession and the issuance of a warrant of eviction, and he agreed to leave the apartment by the end of August 2009. *See* Def. 56.1 Stmt. ¶ 20. Judgment was entered in accordance with the stipulation. *See* Decision and Judgment, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8. The stipulation does not indicate its effect on plaintiff's housing-court counterclaims; the housing court judgment states that neither Williams nor the Authority was entitled to money from the other. *See* Stipulation of Settlement, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8; Decision and Judgment, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8.

Williams did not vacate the apartment as he had promised. Instead, he filed a *pro se* motion in housing court in November 2009 requesting that the May 2009 judgment be vacated. *See* Affidavit in Support of an Order to Show Cause to Vacate a Judgment, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8. The motion was denied. *See* Def. 56.1 Stmt. ¶ 21.

Shortly thereafter, Williams' counsel filed a motion seeking additional time for plaintiff to vacate. *See* Order to Show Cause, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8. Both sides agreed to a temporary stay of the warrant of eviction; it was also agreed that Williams would have until the end of December 2009 to leave. *See* Def. 56.1 Stmt. ¶ 22.

Williams again failed to leave as he had agreed to do. Def. 56.1 Stmt. ¶ 23. Served on the plaintiff in early January 2010 was the agreed-upon warrant of eviction; the eviction was

scheduled for the end of that month. *See id.* ¶ 24. Shortly after the plaintiff was served with the warrant, Williams' counsel informed the Authority that he no longer represented Williams. *See* Letter of David C. Wims, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-8.

Plaintiff then filed a *pro se* motion seeking additional time to vacate. The motion was denied. *See* Def. 56.1 Stmt. ¶ 23. It appears that plaintiff did eventually leave in late January 2010. *See id.* ¶¶ 24-25.

Williams sued the Authority in New York state court in January 2010, contending that the Authority unlawfully discriminated against him on the basis of his race and his disability in violation of federal, state, and city law when it refused to allow him to succeed to his mother's lease. *See* Compl ¶¶ 21-70. The Authority removed the case to this court in March 2010. *See* 28 U.S.C. § 1441(a).

The instant summary judgment motion was filed in May 2012. Oral argument was heard in July 2012. Counsel for the plaintiff was informed that he could file a supplemental brief addressing questions raised by the court. He did not do so.

### III. Law

#### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see, e.g., Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 5 (2d Cir. 1999). Summary judgment is warranted when, after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 247-50, 255.

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party appears to meet this burden and would on the basis of the facts proffered be entitled to a judgment as a matter of law, the opposing party must produce evidence that raises a question of material fact to defeat the motion. *See* Fed. R. Civ. P. 56(c). This evidence may not consist of "mere conclusory allegations, speculation[,] or conjecture." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Del. & Hudson Ry. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) ("Conclusory allegations will not suffice to create a genuine issue").

### B. Relevant Antidiscrimination Law

#### 1. Federal Fair Housing Act

"Enacted as Title VIII of the Civil Rights Act of 1968, the Fair Housing Act originally barred discrimination in housing on the basis of race, color, religion, or national origin, and Congress added gender as a protected class in 1974. In 1988, Congress amended the FHA to prohibit discrimination based on handicap and familial status." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 (11th Cir. 2008). The stated purpose of Congress in enacting the FHA was to "provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601.

The subsection of the FHA that serves to bar race discrimination in the provision of housing provides that "it shall be unlawful . . . to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). The statute similarly makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or

9

rental of a dwelling, or the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." *Id.* § 3604(b).

Proscribed as well, as noted above, is discrimination on the basis of disability. The FHA makes it illegal to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter." *Id.* § 3604(f)(1)(A). Discrimination against any person on the basis of his disability in the terms, conditions, or privileges of sale or rental of a dwelling—or in the provision of services or facilities in connection with that dwelling—is prohibited. *See id.* § 3604(f)(2). For purposes of the FHA's proscription on discrimination based on handicap, "discrimination" is defined to include:

> a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling[.]

*Id.* § 3604(f)(3)(B).

A person is considered handicapped for purposes of the FHA if he has a physical or mental impairment (not resulting from the use of illegal drugs) that substantially limits one or more of his major life activities, if he has a record of having such an impairment, or if he is regarded as having such an impairment. *See id.* § 3602(h).

An FHA plaintiff may proceed on any one or more of three theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation. *See Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002); *cf. Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003).

FHA claims of intentional discrimination and disparate impact are analyzed pursuant to the *McDonnell Douglas* burden-shifting framework. *See Reg'l Econ. Cmty. Action Program,*

294 F.3d at 48 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003).

The *McDonnell Douglas* framework requires first that an antidiscrimination plaintiff make out a prima facie case of discrimination. *See Mitchell*, 350 F.3d at 47. In the disparate treatment context, a plaintiff may do so by showing (1) that he is a member of a protected class; (2) that he sought and was qualified to rent or purchase the subject housing; (3) that he was rejected; and (4) that the housing opportunity remained available to other prospective renters or purchasers. *See id.*; *see also Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1038 (2d Cir. 1979).

When an FHA plaintiff pressing a claim of disparate treatment succeeds in establishing a prima facie case of discrimination, "the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision." *Mitchell*, 350 F.3d at 47. "If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that discrimination was the real reason for the defendant's action. Summary judgment is appropriate if no reasonable jury could find that the defendant's actions were motivated by discrimination." *Id.* (citation omitted); *see also Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002).

The *McDonnell Douglas* analysis is also applied to FHA discrimination claims premised upon a theory of disparate impact; the relevant evidentiary burdens, however, are slightly different.

> In order to make out a prima facie case under the FHA on a theory of disparate impact, a plaintiff must demonstrate that an outwardly neutral practice actually or predictably has a discriminatory effect; that is, has a significant adverse or disproportionate impact on minorities, or perpetuates segregation. The plaintiff need not make any showing of discriminatory intent, however.

*Fair Housing in Huntington Comm., Inc. v. Town of Huntington*, 316 F.3d 357, 366 (2d Cir. 2003) (citation omitted). "When establishing that a challenged practice has a significantly adverse or disproportionate impact on a protected group, a plaintiff must prove the practice actually or predictably results in discrimination." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575 (2d Cir. 2003). "A plaintiff has not met [the] burden if it merely raises an inference of discriminatory impact. Furthermore, the plaintiff must show a causal connection between the facially neutral policy and the alleged discriminatory effect." *Id.* (citation omitted).

Should a plaintiff makes out a prima facie case of disparate impact, the "burden then shifts to a defendant to demonstrate that its actions furthered a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect." *Fair Housing in Huntington Comm., Inc.*, 316 F.3d at 366 (internal quotation marks and ellipses omitted). "The basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy. This comparison must reveal that although neutral, the policy in question imposes a significantly adverse or disproportionate impact on a protected group of individuals." *Tsombanidis*, 352 F.3d at 575.

An FHA claim premised on a failure to make a reasonable accommodation is analyzed differently. "[I]n enacting the anti-discrimination provisions of the [Fair Housing Act Amendments, which served to proscribe housing discrimination on the basis of handicap], Congress relied on the standard of reasonable accommodation developed under section 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 334 (2d Cir. 1995). A defendant violates the FHA's reasonable accommodation provision "if it refuses to make changes to traditional rules or practices if necessary to permit a

person with handicaps an equal opportunity to use and enjoy a dwelling." *Reg'l Econ. Cmty. Action Program*, 294 F.3d at 53. "Plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003).

"[I]f the reasonable accommodations provision is triggered, a defendant can be required to incur reasonable costs to accommodate a plaintiff's handicap, provided such accommodations do not pose an undue hardship or a substantial burden." *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 300 (2d Cir. 1998) (internal quotation marks omitted).

### 2. State and City Antidiscrimination Law

Both the State of New York and the City of New York have proscribed race and disability discrimination in the provision of rental housing. Both jurisdictions require, in the case of disabled residents, the reasonable accommodation of their disabilities. *See* N.Y. Exec. Law §§ 296(2-a), (5) (18)(2); N.Y.C. Admin. Code §§ 8-107(5), (15).

Disparate treatment and disparate impact claims asserted pursuant to the law of New York State or the law of New York City—or pursuant to both—are analyzed using the *McDonnell Douglas* burden-shifting framework. *See, e.g., Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (per curiam). The sections of New York State and New York City law requiring provision of reasonable accommodations to disabled renters are substantially similar to the analogous provision of the FHA. *Compare* 42 U.S.C. § 3604(f)(3)(B), *with* N.Y. Exec. Law § 296(18)(2), *and* N.Y.C. Admin. Code § 8-107(15)(a).

### IV. Application of Law to Facts

Plaintiff's claims of race and disability discrimination can be profitably categorized for purposes of analysis in the following fashion. Williams contends in his complaint that:

1. The Authority discriminated against him—because of his disability—in the provision of the terms and conditions governing his rental of the apartment, *see* Compl. ¶¶ 23-26, 31-34, 39-42;

2. The Authority failed to reasonably accommodate his disability by refusing to allow him to succeed to his mother's lease, *see id.* ¶¶ 27-30, 35-38, 43-46;

3. The Authority discriminated against him—because of his race—in the provision of the terms and conditions governing his rental of the apartment, *see id.* ¶¶ 47-50, 55-58, 63-66; and

4. The Authority's rent-succession policies have a disparate impact on African Americans, *see id.* ¶¶ 51-54, 59-62, 67-70.

None of these claims have merit.

Summary judgment is granted to the defendant on Williams' disparate treatment claims—*i.e.*, the claims listed in categories 1 and 3. Even assuming, without deciding, that he has made out prima facie cases of race and disability discrimination with respect to these claims, he has done nothing to rebut the legitimate, nondiscriminatory reason offered by the Authority to justify its refusal to allow him to succeed to his mother's lease after her death—*i.e.*, his failure to become part of his mother's household pursuant to the Authority's reasonable rules and regulations, which rendered him ineligible for RFM status. *See* Def. 56.1 Stmt. ¶ 14; *see also* Project Grievance Summary, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 34-4. Notably, plaintiff's memorandum of law filed in opposition to the motion for summary judgment does not even attempt to deflect the force of the nondiscriminatory reason proffered by the Authority. *See* Memorandum of Law in Opposition to

Defendant's Motion for Summary Judgment ("Pl. Mem."), Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 35.

Summary judgment is also granted to the Authority on plaintiff's disparate impact claims. Plaintiff contends essentially that the Authority's practice of commencing licensee holdover proceedings—that is, eviction proceedings against occupants alleged not to have a right to remain in Authority housing—has a disparate impact on African Americans. *See id.* at 9. Proffered as evidence in support of this theory is a chart summarizing the holdover proceedings initiated by the Authority between 2008 and 2010 against occupants of the apartment complex in which plaintiff's mother resided. *See* Decl. of David C. Wims, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 36. He contends that the chart—showing that the Authority initiated twenty-eight holdover proceedings in the relevant period—is sufficient to make out a prima facie case of disparate impact discrimination, since, he argues, it shows that nineteen holdover proceedings were commenced in the period 2008-2010 against African Americans, while only one was commenced against a non-Hispanic white. *See* Pl. Mem. 9-11.

This evidence is insufficient to raise even an inference of discriminatory impact, let alone a prima facie case of disparate impact discrimination. The principal problem with Williams' evidence—even assuming its admissibility—is that it does not allow for comparison with similarly situated occupants of other races. For a jury to be able to determine whether the Authority's policy of commencing holdover proceedings against unauthorized occupants had a disparate impact on African Americans, it would need to know the total number of occupants against whom holdover proceedings *could* have been initiated; that information would need to be broken down demographically so that a comparison could be made. Plaintiff's evidence shows

at most that the majority of occupants of the apartment complex against whom holdover proceedings were commenced during the relevant period were African American; he does not, however, provide any evidence regarding the racial makeup of the complex against which the information contained in his chart can be compared. If, for example, virtually all of the residents of the relevant apartment complex are African American, then the plaintiff would be hard pressed to argue, without more, that the Authority's initiation of holdover proceedings against occupants of that apartment complex had a disparate impact on African Americans relative to occupants of other racial groups. Plaintiff has *not* attempted to argue that the Authority administers its eviction policy in a way that has a disparate impact on African Americans by comparing demographically the eviction proceedings initiated by the Authority generally—*i.e.*, without regard to apartment complex. In sum, Williams has shown only that the Authority's eviction policy had an impact on African Americans; he has not provided evidence suggesting that it had a *disparate* impact.

And, even assuming that plaintiff could make out a prima facie case of disparate impact, he has done nothing to rebut the Authority's legitimate nondiscriminatory explanation for its action. Each of the occupants whose residence in the apartment complex was terminated was deemed unsuitable as an occupant for one or more reasons. One of the most common reasons indicated on plaintiff's chart is chronic rent delinquency.

The Authority has a legitimate interest in making room in its housing stock for tenants who appear to be capable of complying with its rules and regulations. By definition, the only way for it to make those apartments available to tenants who appear capable of complying with its rules and regulations is to evict those who are not in compliance.

Summary judgment is granted to the Authority on plaintiff's remaining claims: that is, his contentions that the Authority failed to reasonably accommodate his disability by allowing him to succeed to his mother's lease. Even assuming, without deciding, that Williams' request for a reasonable accommodation was properly presented to the Authority, *see Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 578-79 (2d Cir. 2003), it is undisputed that the Authority would have violated its own tenant selection policy—which was adopted pursuant to federal regulations and a federal consent decree—and federal law had it granted his request. *Compare* Def. 56.1 Stmt. ¶ 9, *with* Plaintiff's Local Rule 56.1 Counterstatement of Facts ¶ 9, Williams v. New York City Housing Authority, No. 10-CV-1070 (E.D.N.Y. May 25, 2012), CM/ECF No. 37. Requiring such action from the Authority would be patently unreasonable. If the court concluded otherwise, the Authority would find itself whipsawed between the conflicting obligations of the federal consent decree and the requirements of the FHA and its state and city analogs.

Plaintiff was afforded full due process over the course of the extended administrative and housing court proceedings that preceded this litigation.

Raised at oral argument for the first time was the contention that the Authority neglected to afford plaintiff a reasonable accommodation of his disability by failing to fully negotiate with him regarding his eviction date, despite the fact that his eviction was a foregone conclusion. This argument—even assuming that it is properly considered at this late stage in the litigation—is without merit. Williams agreed in May 2009 to vacate the apartment by the end of August 2009. *See* Def. 56.1 Stmt. ¶ 20. He did not do so. In November 2009, execution of the warrant of eviction was stayed until the end of December 2009. *See id.* ¶ 22. Plaintiff still failed to

vacate the apartment as he had agreed to do. *See id.* ¶ 23. He eventually left in January 2010. *See id.* ¶¶ 24-25.

Given the scarcity of the Authority's housing stock and the federal consent decree governing its tenant selection procedures, no reasonable jury could conclude that the Authority failed to give plaintiff a reasonable amount of additional time, in consideration of his ailments, to vacate the apartment. No statute or case has been provided by the plaintiff suggesting that an accommodation of the sort he requests was required.

V. **Conclusion**

Summary judgment against the plaintiff is granted. No costs or disbursements.

SO ORDERED.

_____
Jack B. Weinstein
Senior United States District Judge

Date: July 25, 2012
Brooklyn, New York